**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**UNION INSURANCE COMPANY,**
as Successor in Interest to
**Great River Insurance Company**                                                           **PLAINTIFF**


V.                                          CIVIL ACTION NO.:  3:09-CV-283-HTW-LRA


**THE TRAVELERS INDEMNITY COMPANY
OF CONNECTICUT,
FIDELITY AND GUARANTY INSURANCE
UNDERWRITERS, INC., and
UNITED STATES FIDELITY AND GUARANTY COMPANY          DEFENDANTS**

---

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
UNION INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

---

Defendants, The Travelers Indemnity Company of Connecticut, Fidelity and Guaranty Insurance Underwriters, Inc., and United States Fidelity and Guaranty Company (collectively "Travelers") submit this Memorandum in Opposition to Plaintiff Union Insurance Company's Motion for Summary Judgment, and would show unto the Court as follows:

**I.     INTRODUCTION**

In its Motion for Summary Judgment, Union Insurance Company ("Union") asks the Court to make a series of *Erie* guesses about Mississippi law regarding the application of multiple insurance policies in the complex world of continuous exposure tort litigation. However, it is not necessary for the Court to venture out into those murky waters in order to resolve the present dispute. Rather, this dispute can be resolved by finding that the insured,

Custom,[1] plainly and simply breached its insurance contract with Travelers and/or by applying the well established voluntary payment doctrine which bars Union's claims.

To the extent the Court feels compelled to make *Erie* guesses to resolve this dispute, matters are less clear than Union has represented and depend upon information and factual determinations that have not been presented to or considered by the Court. The decisions Union asks this Court to make, particularly with respect to overall indemnity limits, are without precedent and contrary to the language set forth in the insurance policies in this matter. Additionally, the position Union promotes would result in significant uncertainty for claimants, insureds, and insurers, not to mention the fact that Union's requested rulings would actually fail to resolve the overall indemnity question. Finally, case law suggests that the Mississippi Supreme Court would likely not apply the rule Union advocates. For these reasons, Travelers requests that the Court deny Union's request for summary judgment and grant summary judgment in favor of Travelers.[2]

## II. LAW AND ARGUMENT

### A. CUSTOM'S BREACH OF THE INSURANCE CONTRACT AND THE VOLUNTARY PAYMENT DOCTRINE BAR UNION'S CLAIMS.

As discussed at length in Travelers' Motion for Summary Judgment ("Travelers Motion") and Supporting Memorandum ("Travelers Memorandum") [Doc. 31, pg. 6 and 32, pp. 7-8],[3] Custom breached its insurance agreement with Travelers by authorizing the settlement of the Gatlin Action[4] without the consent of Travelers and while Travelers was vigorously defending

---

[1] Custom Aggregate and Grinding, Inc. was the insured and a defendant in the underlying Gatlin Action.
[2] Travelers incorporates herein its recitation of facts included in its Memorandum of Authorities in Support of its Motion for Summary Judgment [Doc. 32, pp. 2-6] as if fully set forth herein.
[3] In the interest of efficiency, Travelers incorporates those arguments by reference as if fully set forth herein.
[4] Notably, Union fails to mention that Travelers did not consent to the settlement amount and that Custom and Union (along with the other insurers) unilaterally determined to settle the Gatlin Action in the face of Travelers' vocal dissent.

Custom in the Gatlin Action, as was its right and obligation to Custom under the policies of insurance it issued to Custom.  *See Ideal Mut. Ins. Co. v. Myers*, 789 F.2d 1189, 1202 (5th Cir. 1986); s*ee also St. Paul Prop. & Liab. Ins. Co. v. Nance*, 577 So. 2d 1238, 1242 (Miss. 1991).  By its breach in approving the other carriers settling the Gatlin Action over Travelers' objection, Custom forfeited its right to collect from Travelers any additional amounts paid in settlement beyond what Travelers agreed to pay.  *See Motiva Enter., LLC v. St. Paul Fire and Marine Ins. Co.*, 445 F.3d 381, 386-87 (5th Cir. 2006); *Danrick Constr. Inc. v. Am. Cas. Co. of Reading Pennsylvania*, 314 Fed. Appx. 720, 724 (5th Cir. 2009). Because Union is entitled to no greater rights under the insurance policy than Custom, Union is also barred from collecting any alleged excess payment made in settlement.  *See Pac. Indem. Co. v. Acel Delivery Serv., Inc.*, 485 F.2d 1169, 1177 (5th Cir. 1973).

Further, the voluntary payment doctrine clearly precludes Union from receiving contribution from Travelers. *See Genesis Ins. Co. v. Wausau Ins. Companies*, 343 F.3d 733, 736 (5th Cir. 2003)(citing *McDaniel Bros. Constr. Co., Inc. v. Burk-Hallman Co.,* 175 So. 2d 603, 605 (Miss. 1965); *Presley v. Am. Guar. & Liab. Ins. Co.,* 116 So. 2d 410, 416 (Miss. 1959); *McLean v. Love,* 157 So. 361, 362 (Miss. 1934)).  The voluntary payment doctrine precludes the recovery of a payment which, when it is paid, is: (1) made without compulsion, fraud, mistake of fact, or agreement to repay; (2) not owed by the payor; and, (3) made by the payor despite having a remedy or defense at law against the demand which the payor did not utilize.  *Id.*   Union's payment in the Gatlin Action meets all of these criteria.  For these reasons and the argument contained in Travelers' Memorandum [Doc. 32, pp. 8-15], Union's claims are barred by the voluntary payment doctrine.

**B.     UNION'S PAYMENT WAS NOT COMPELLED, AND THERE IS NO EVIDENCE THE SETTLEMENT WAS REASONABLE.**

### 1.     Union's payment was voluntary and was not compelled.

In support of its contribution claim, Union claims it was compelled to settle the Gatlin Action (and make the alleged overpayment) and that the settlement was reasonable. However, a payment is only compelled or otherwise coerced where it is made to avoid the loss of a necessity, or to prevent an injury to a person, business or property which is different and disproportionately greater than the unlawful demand. *Genesis*, 343 F.3d at 740. Union has presented no evidence that its alleged overpayment meets any of these requirements. Rather, Union chose to pay more than it believed it should have to settle the matter, rather than continue defending the case on its merits. Union's decision, similar to the one in *Genesis*, was volitional and not as the result of compulsion. *Id*. In *Genesis*, the court clearly found that the decision between settling or taking the case to trial does not rise to the level of "compulsion" in order to avoid the voluntary payment doctrine. *Id.* at 739-40.

While Union asserts, in support of its compulsion argument, that Custom would have been exposed to "the real potential of an excess judgment" if the Gatlin Action had not settled, Union's argument is unsupported by the factual record. To the contrary, Union chose to settle the Gatlin Action as a business decision to avoid accumulating defense costs prior to and during trial. Union cannot recoup the alleged additional monies it paid to settle the Gatlin Action, while at the same time foreclosing Travelers' right to continue defending the matter.

### 2.     Union cannot show that the settlement was reasonable.

If the Court declines to apply the voluntary payment doctrine and finds that Union was legally obligated to pay Custom, Union must still prove that the amount paid to settle the

Gatlin Action was reasonable. *Guidant Insurance Co. v. Indemnity Insurance Co. of North America*, 13 So. 3d 1270, 1280 (Miss. 2009). Union has failed to make this showing.

Union claims that emails exchanged amongst some of the adjusters responsible for the Gatlin Action, presumably regarding potential authority prior to mediation,[5] prove the settlement amount was reasonable. However, the emails do nothing of the sort. Rather, the documents and emails show that Custom's defense counsel estimated the most likely ***verdict*** assessed to Custom. [Doc. 47, p. 7-15]. This estimated ***verdict*** amount was well below the ultimate settlement amount. *Id*. That fact alone is strong evidence that the settlement was not reasonable.

At present, the only evidence Union has offered in support of the contention that the settlement was reasonable is a lone unsupported comment in its brief and various emails which Travelers suggests only further illustrate there was much disagreement as to whether the matter should have been settled and if so, what the settlement value was. [Doc. 35, pg. 12]. In support of its Motion for Summary Judgment, Travelers submitted the affidavit of Claudette Savwoir and accompanying emails, which detail the evidence supporting its view that the settlement amount was not reasonable, including but not limited to the numerous unresolved legal defenses to Gatlin's claims. [Doc. 31, Exhibit "G," Affidavit of Claudette Savwoir, filed under seal]. Travelers disputes that the Gatlin Action was settled for a reasonable settlement amount. As such, if the Court declines to bar Union's action because of Custom's breach of the insurance contract or the voluntary payment doctrine, Union's summary judgment motion should be denied since there is a genuine issue of material fact regarding the reasonableness of the Gatlin settlement amount.

---

[5] It is unclear exactly what emails Union is referring to since Union references "Exhibit 5" in its Memorandum [Doc. 35, pg. 12], however, "Exhibit 5" is an insurance policy, not emails.

**3.     As discussed in Travelers' Memorandum, the case law cited by Union in support of its claims is inapplicable.**

Union claims that Mississippi caselaw gives one insurer the right to pursue contribution from another insurer who has "underpaid." [Doc. 35, p. 11]. To support this point, it cites two Mississippi Supreme Court cases which are discussed at length in Travelers' Memorandum -- *State Farm v. Allstate*[6] and *Guidant Mutual v. Indemnity Co. of America.*[7] For the reasons stated in Travelers' Memorandum [Doc. 32, pp. 13-15] neither case stands for the proposition which Union asserts. Rather, both cases stand for the unremarkable proposition that an insurer which breaches its duty to defend its insured cannot argue that a settlement to protect the abandoned insured was a voluntary payment. Obviously, an insurer that breaches its obligation to defend its insured under a contract of insurance with its insured cannot insist that the insured nevertheless abide by the terms of the contract. However, Travelers did not breach its obligations to Custom. Rather, Travelers was vigorously defending Custom, had communicated its commitment to continue defending Custom, and had voiced its objection to the settlement amounts being contemplated by Custom, Union, and the other insurers. The cases Union now cites in support of its argument that it should be excused from unilaterally settling the Gatlin Action over Travelers' objection are factually distinct and are clearly not dispositive of the dispute in this matter.

**C.     UNION'S POSITION ON THE INDEMNITY LIMITS OF EACH INSURER IS UNSUPPORTED AND UNFAIR.**

Union has asked the Court to make a series of *Erie* guesses about how the Mississippi Supreme Court would resolve several contentious issues of insurance coverage law. As discussed in detail above, Travelers believes that the dispute in this case can be resolved using basic and well established principles of Mississippi law. Further, the rulings that would be

---

[6] 255 So. 2d 667 (Miss. 1971).
[7] 13 So. 3d 1270 (Miss. 2009).

necessitated by these unresolved mass tort coverage issues are unnecessary. However, to the extent the Court feels compelled to analyze these questions, Travelers would make the following arguments.

With respect to Union's arguments "A" and "B" in its Memorandum [Doc. 35, pp. 5-9], Travelers does not dispute that Custom's insurers implicitly and informally adopted the "exposure" theory in the Gatlin Action to determine which of Custom's insurers should respond to the Gatlin Action. Travelers also agrees that each insurer, which insured Custom during the time Custom claims it sold sand to Mr. Gatlin's employers, agreed to and assumed the duty to defend Custom. Pursuant to that duty to defend, the insurers mutually and informally agreed to apportion defense costs in the Gatlin Action using a "time-on-the-risk" methodology, with Travelers paying 48.57% of the defense costs.[8] Based upon this methodology, Travelers also agreed to pay that "time-on-the-risk" proportion (or its pro-rata share) of the settlement amount it viewed to be reasonable, $1,000,000. As such, Travelers agreed to pay and ultimately did pay $485,700 -- an amount it believed reflected the reasonable settlement value of the Gatlin Action based upon the "time-on-the-risk" or "pro-rata" methodology. As discussed in more detail below, Travelers' dispute with Union's argument involves the overall indemnity available to Custom for the Gatlin claims, i.e., Union's erroneous position that each insurer should be responsible for "at least" $1,000,0000.

**1.     There should be one "occurrence" limit of $1,000,000 total available to Custom for the Gatlin claims.**

As discussed in detail in Travelers' Memorandum [Doc. 32, pp. 15-19] and with respect solely to the coverage issues presented in this matter, Travelers contends that based upon the

---

[8] This "agreement" was informal and subject to the reservation of rights issued by Travelers in the Gatlin Action. [Doc. 31, Exhibit "G," Affidavit of Claudette Savwoir, filed under seal].

"occurrence" language in Travelers' and Union's insurance policies, Gatlin's claims constitute an "occurrence."[9] As such, there is one occurrence limit of $1,000,000 available to Custom from all insurers for the Gatlin Action. The Fifth Circuit, applying Mississippi law, has recognized and upheld this type of analysis where there are multiple policy years implicated but only one occurrence. In the *Madison Materials* case, the Fifth Circuit held that a continuous scheme of embezzlement by an employee was one occurrence under a first party employee dishonesty policy. *Madison Materials Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 523 F.3d 541 (5th Cir. 2008). In that case, the court stated:

> The policy ***defines occurrence as "***an act or ***series of related acts*** involving one or more 'employees.'" Mississippi courts have recognized that an ***"occurrence" is determined by the cause or causes of the resulting injury***. Walker repeatedly committed related acts of embezzlement throughout the decade of St. Paul's and USF&G's coverage, but ***there was only one cause of the injury sustained by Madison - - Walker's dishonesty***. ***As there was but a single cause of Madison's injury, and as the policy states that multiple related acts are to be treated as a single occurrence***, ***there was only one occurrence*** of employee dishonesty ***over the ten year period***.

*Id.* at 543-44 (footnotes omitted, emphasis added). Since the employee's course of theft was one occurrence, the insured was only entitled to the per occurrence limit for the policy in force when the theft was discovered. *Id.* at 546. *See also*, *American Physicians Insurance Exchange v. Garcia*, 876 S.W. 2d 842, 853-4 (Tex. Sup. Ct. 1994)("Simply because a 'Claim Occurrence' extends throughout several policy periods does not raise the per-occurrence indemnity cap established in every policy. Even the jurisdiction embracing the broadest coverage trigger rule has held that multiple coverage does not permit an insured to 'stack' the limits of multiple policies that do not overlap…"); *N. Am. Specialty Ins. Co. v. Royal Surplus*

---

[9] To be clear, Travelers is not conceding the Gatlin's alleged injuries were the result of an occurrence. Rather, to the extent that there is a finding that the injuries were the result of an occurrence, they were part of a single occurrence subject to one occurrence limit.

*Lines Ins. Co.*, 541 F.3d 552, 556-9 (5th Cir. 2008) (multiple negligent failures to care for a nursing home patient were "related," citing *Garcia* the court applied its anti-stacking rule and determined that liability limits did not stack); *Hartford Cas. Ins. Co. v. Med. Protective Co. of Fort Wayne, Indiana*, 641 N.E.2d 545, 551-2 (Ill. App. Ct. 1994)(holding that multiple policies do not accumulate to provide a "cumulative savings account of indemnity," and that "insurance coverage cannot be stacked").

This view is compatible with the facts of the Gatlin Action and the application of the exposure theory as to defense and pro-ration of settlement or judgment. In the underlying Gatlin Action, Mr. Gatlin allegedly contracted silicosis as the result of his continuous and repeated exposure to substantially the same condition, silica dust over a several year period. His exposure and alleged bodily injury were caused by this alleged occurrence. As such, the insurance carriers are collectively responsible for Custom's defense in the Gatlin Action up to the occurrence limit, with each insurer paying its pro-rata share of the occurrence limit. Travelers has already tendered its proportionate share of the occurrence limit, $485,700. For the reasons stated herein and in Travelers' Memorandum [Doc. 32, pp. 15-19], Travelers respectfully submits that the one million dollar occurrence limit is the maximum amount of indemnity available in the Gatlin Action.

**2.     Union's position of "stacking by insurer" is not supported by case law or the policies.**

Union urges the court to "declare as a matter of law that *liability limits of each carrier was <u>at least</u> $1,000,000.00*, the amount of single policy liability limits issued by each carrier over the 104 month period." [Doc. 35 p. 10] (emphasis added). Union appears to be advocating a mutated version of horizontal stacking, i.e., "stacking by insurer." Under

Union's proposed rule, an insured is entitled to, at least, one per occurrence limit from each insurer which provided coverage during the time Custom allegedly sold sand to Gatlin's employer.

Union has failed to cite a single case which supports this argument for the stacking of coverage. The two cases cited by Union, *Insurance Co. of North America v. Forty-Eight Insulations*, 633 F.2d 1212 (6th Cir. 1980) and *Boston Gas Co. v. Century Indemnity Co.*, 910 N.E. 2d 290 (Mass. 2009) do not support stacking by insurer.

Union cites to a single footnote in *Forty-Eight Insulations* in support of its interpretation. The 5th Circuit Court of Appeals has discussed that very footnote, stating;

> Without meaning to express either approval or disapproval, we note that the *Forty-Eight* court saw in its rule of apportionment the potential for stacked coverage and therefore affirmed the district court's resolution of the matter, which provided that " 'no insurer should be held liable for any one case to indemnify [the manufacturer] for judgment liability for more than the highest single yearly limit in a policy that existed during the period of the claimant's exposure for which judgment was obtained.'" *Id.* [*Ins. Co. of N. Am. v. Forty-Eight Insulations*, 633 F.2d 1212 (6th Cir. 1980)] at 1226 n.28 (quoting *Forty-Eight Insulations, Inc.,* 451 F.Supp. at 1243).

*Clemtex, Inc. v. Southeastern Fidelity Insurance Co.*, 807 F.2d 1271, 1279 n.18 (5th Cir. 1987). The Fifth Circuit Court of Appeals, despite discussing the very footnote cited by Union, has not adopted any rule based on it. Additionally, Forty-Eight Insulation is distinguishable from this mater as well since it discussed hypotheticals in the event of judgment, as opposed to an agreed settlement.

Further, the progeny of *Forty-Eight Insulations* from other jurisdictions does not support a "stacking by insurer" rule. *See Pub. Serv. Co. of Colorado v. Wallis and Co.*, 986 P.2d 924 (Colo. 1999) (citing *Forty-Eight Insulations* in a pollution property damage case and allowing policy limits stacking, with total costs to be apportioned using a time-on-the-risk method);

*Owens-Illinois, Inc. v. United Ins. Co.*, 650 A.2d 974, 976 (N.J. 1994) (citing *Forty-Eight Insulations*, stacking all available policy limits, and apportioning liability according to a time-on-the-risk and limits formula). As such, there is no case that Travelers has located which has applied, much less ratified, the analysis and ruling that Union requests that this Court make.

Union's reliance on the recent *Boston Gas* decision is similarly misplaced. In *Boston Gas*, a Massachusetts court held that a policyholder must contribute to defense and indemnity for bare or uninsured years and that a single insured should not bear the entire burden of indemnity for a risk that spanned numerous years. *Boston Gas Co. v. Century Indem. Co.*, 910 N.E.2d 290, at 312-13 (1st Cir. 2009). The *Boston Gas* court did not deal with, much less ratify, Union's position of "stacking by insurer" and it certainly did not address the issue of how indemnity should be applied when there is a dispute amongst insurers over a settlement amount. As such, *Boston Gas* is not dispositive or helpful in the analysis of overall indemnity limits issue presented in this case.

### 3. "Stacking by insurer" is unfair.

Union's proposed "stacking by insurer" rule would be bad for insureds, claimants, insurers, and the courts. One of the virtues of either the "one occurrence" rule or its polar opposite "horizontal stacking" are the simplicity of applying and determining indemnity. Injured parties, insureds, and insurers can all quickly and easily determine the total amount of coverage available, and make decisions accordingly.

Union's "stacking by insurer" rule interjects chance into the determination of how much coverage an insured actually obtained. A hypothetical, describing the case of two insureds, makes this point clear. Insured A purchased 10 consecutive one year liability insurance policies, each with $1,000,000 per occurrence limits. Insured A purchased all of its policies

from the same insurance company. Insured B also purchased 10 consecutive annual liability insurance policies, each with a $500,000 per occurrence limit, half of Insured A's. Each of Insured B's policies was purchased from a different insurer.

Insured A bought twice as much insurance as B, paying more in premium for more protection. Yet, under Union's proposed rule, if Insured A and B are each sued for a continuous tort, <u>Insured B has substantially more coverage</u>. Union's "stacking by insurer" rule would give Insured A $1,000,000 in coverage, one per occurrence limit for each of its insurers. Insured B, on the other hand, would have $5,000,000 in coverage. Despite the fact that every year Insured B bought half the insurance Insured A did, under Union's proposed rule, Insured B has five times more coverage than Insured A. Such an outcome is unjust, and the rule which it would generate should not be adopted.[10]

The problems with a "stacking by insurer" rule do not end there. Union's rule has no way to address insurers which have merged since policies were written. Does the merger decrease the insured's coverage? In cases where an insurer who would otherwise respond has gone bankrupt, who is responsible for its share, the solvent insurers, or the insured? Finally, if the court accepts Union's rule, this entire dispute will eventually have to be re-litigated. Union asks the court to "declare as a matter of law that, liability limits of each carrier was <u>at least</u> $1,000,000.00…." [Doc. 35, p. 10]. "At least" does not dispose of the real question, "how much?" Claimants, insureds, and insurers will still not know the actual limits of coverage available in continuous exposure tort cases. The question of whether limits stack beyond one

---

[10] This problem is present, although to a lesser degree, under pure horizontal stacking. If insurance policy limits are allowed to accumulate year after year, insureds obtain far more coverage than they actually purchased. *See American Physicians Insurance Exchange v. Garcia*, 876 S.W. 2d 842, 853-4 (Tex. Sup. Ct. 1994); *Hartford Cas. Ins. Co. v. Med. Protective Co. of Fort Wayne, Indiana*, 641 N.E.2d 545, 551-2 (Ill. App. Ct. 1994).

instance per insurer will eventually have to be resolved. Until it is, informed negotiation and settlement will be severely hampered.

### III.   CONCLUSION

As discussed above, it is unnecessary for the Court to wade into the swamp of insurance coverage for mass tort litigation. This case may be decided by the Court utilizing the well established voluntary payment doctrine and/or finding that Custom's breach of the insurance contract bars Union's claims. However, if the Court does consider and rule upon the occurrence issues in this matter, Travelers would submit that the "one occurrence" rule has significantly more supporting authority and may be applied in a more consistent manner than the proposed rule espoused by Union. For these reasons, Travelers requests that the Court deny Union's motion for summary judgment and grant summary judgment in favor of Travelers, dismissing Union's case against Travelers.

Respectfully submitted,

THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC. AND UNITED STATES FIDELITY AND GUARANTY COMPANY

BY: CARROLL WARREN & PARKER, PLLC


BY: *s/Lee Ann Thigpen*_____
            Lee Ann Thigpen

**OF COUNSEL:**

Lee Ann Thigpen, Esq. (MB# 100229)
CARROLL WARREN & PARKER, PLLC
188 East Capitol Street
One Jackson Place, Suite 1200
Post Office Box 1005
Jackson, Mississippi 39215-1005
Telephone (601) 592-1010
Facsimile (601) 592-6060

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the above pleading via the U.S. District Court for the Southern District of Mississippi's ECF filing system to the following recipients:

> J. Stephen Wright, Esq.
> James C. Martin, Esq.
> Wright & Martin, LLP
> P.O. Box 1950, 605 Steed Road
> Ridgeland, Mississippi 39158
>
> *Attorneys for Plaintiffs Union Insurance Company, as Successor in Interest to Great River Insurance Company*

This the 13th day of September, 2010.

BY:   *s/Lee Ann Thigpen*
         Lee Ann Thigpen